**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PASCAL GEDEON,<br>    Plaintiff,<br><br>        v.<br><br>THE ATTORNEY GENERAL, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:   CIVIL ACTION NO. 24-CV-4277<br>:<br>:<br>: |

**MEMORANDUM**

**GALLAGHER, J.**                                                        **SEPTEMBER 17, 2024**

Pascal Gedeon, a pretrial detainee at FDC Philadelphia, filed this action asserting violations of his constitutional rights. Named as Defendants are the Attorney General, the United States, the United States Marshal Service,[1] FDC Philadelphia, Unknown Director of the U.S. Marshals, Unknown U.S. Marshal Deputy, and the Warden of FDC Philadelphia. Gedeon also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Gedeon leave to proceed *in forma pauperis* and dismiss the case.

**I.     FACTUAL ALLEGATIONS**[2]

Gedeon alleges that unknown U.S. Marshals deprived him of sanitary conditions and access to adequate clothing during his incarceration. (Compl. at 2.) Specifically, he asserts that while detained at FDC Philadelphia he has been placed in the custody of the United States

---

[1] Gedeon names "U.S. Marshals" and "The U.S. Marshals" in his list of Defendants. (Compl. at 1.) The Court understands him to name the United States Marshal Service as a Defendant.

[2] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Gedeon's Complaint. (ECF No. 1). The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

Marshal Service for court appearances in his criminal case before this Court more than fifteen times and "every time the U.S. Marshals had not made soap available for him to wash his hands." (*Id*.)  He has "had no choice but to eat with his hands without washing them, after defecating" causing him to experience stomachaches, diarrhea, and vomiting. (*Id*.)  During these occasions, he has also had to "wear a jumper from 7:30 am to 4:00 pm." (*Id*. at 3.)  He complains that FDC Philadelphia has poor ventilation and the jumper has caused him to overheat and sweat excessively during the summer months. (*Id*.)  It also causes him to experience body odor even if he takes showers daily and uses deodorant. (*Id*.)  Gedeon claims that he is heat sensitive and has to stay in his cell to avoid wearing the jumper and avoid disciplinary action. (*Id*.)  He alleges that detainees are allowed to receive three jumpers and "from day one, the first jumper smells sweaty." (*Id*.)  He asserts that the "policy" is capricious since there is no requirement that he wear a jumper on Saturday or Sunday. (*Id*. at 3-4.)  Gedeon also asserts that he has anxiety because he stays mostly alone in his cell to remain cool. (*Id*. at 4.)  He wants to be able to wear clothing that will allow him to stay cool when it is hot. (*Id*.)  He also seeks $1 billion. (*Id*. at 1.)

**II.     STANDARD OF REVIEW**

The Court grants Gedeon leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.*

*Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, ___ F. 4th ___, 2024 WL 3820969 (3d Cir. Aug. 15, 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Gedeon is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.    DISCUSSION**

    **A.    Claims for Money Damages**

Gedeon asserts constitutional claims for money damages and seeks to present them in accordance with *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971), which created the source for a limited damages remedy for certain claims against federal officials.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability).  Since Gedeon is a federal pretrial detainee, his allegations about the conditions of his confinement are properly understood as raising Fifth Amendment due process claims.  *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018) ("Bistrian's claim [ ] arises under the Fifth Amendment, not the Eighth Amendment, because he was a pretrial detainee . . . .") *abrogation on other grounds recognized by Fisher*, 2024 WL 3820969.

However, the availability of *Bivens* as a cause of action is limited, and the United States Supreme Court "has plainly counseled against creating new *Bivens* causes of action." *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017); *see also Hernandez v. Mesa*, 589 U.S. 93, 101 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." (internal quotations marks and citations omitted)). Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200. The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself – a claim under the Fourth Amendment against FBI agents for handcuffing a man in his own home without a warrant, *id*. 403 U.S. at 389; (2) a claim under the Fifth Amendment against a Congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and, (3) a claim under the Eighth Amendment against prison officials for failure to treat an inmate's asthma, *Carlson v. Green*, 446 U.S. 14 (1980).

Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200. The "rigorous inquiry" has two steps. A court must first determine whether the case presents a "new *Bivens* context." *Abbasi*, 582 U.S. at 139-40. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is

4

new." *Id.* "Differing in a 'meaningful way,' in the very least, means 'an extension' of the *Bivens* remedy, even if just a 'modest extension.'" *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019) (quoting *Abbasi*, 582 U.S. at 147 ("[E]ven a modest extension is still an extension.")); *see also Hernandez*, 589 U.S. 93, 102 ("[O]ur understanding of a 'new context' is broad." (citation omitted)). The Supreme Court noted that meaningful differences may include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139-40.

In a recent decision, the United States Court of Appeals for the Third Circuit has abrogated earlier decisions recognizing that its own extensions of *Bivens* were no longer tenable given recent Supreme Court decisions. *See Fisher*, 2024 WL 3820969, at *5 (holding that the Supreme Court decision in *Egbert v. Boule*, 596 U.S. 482 (2022) "seriously undermines the rationale of *Bistrian* and *Shorter* [*v. United States*, 12 F.4th 366, 374 (3d Cir. 2021)]). In another recent decision, the Third Circuit expressly refused to extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally convicted prisoners. *Kalu v. Spaulding*, ___ F. 4th ___, 2024 WL 3884268, at *16 (3d Cir. Aug. 21, 2024).

Under the first step of the inquiry, it is clear that Gedeon's claims are meaningfully different from the claims recognized by the Supreme Court, and thus represent an attempt to extend *Bivens* to a new context. While his allegations are properly understood as asserting conditions of confinement claims under the Fifth Amendment, the Supreme Court has never recognized such a claim. The only Fifth Amendment claim permitted to proceed was the claim in *Davis* involving employment discrimination by a congressman. 442 U.S. 228. As recognized

in *Kalu*, 2024 WL 3884268, at *16, the Supreme Court has also never sanctioned a conditions of confinement claim under the Eighth Amendment. It has also never recognized a non-medically based conditions of confinement clam brought against the Attorney General, a U.S. Marshal, or the warden of a federal detention facility. *Cf*, *Henry v. Essex Cnty*, No. 23-1987 (3d Cir. Aug. 29, 2014) (holding that a claim against a United States Marshal based on a post-arrest failure to examine the plaintiff's claims of innocence or present her to a magistrate alleged a previously unrecognized *Bivens* context). Gedeon's claims therefore present both a new and unrecognized constitutional source for his money damages claims, as well as a new and unrecognized set of Defendants. Hence, Gedeon's claim as a pretrial detainee is an extension to a new *Bivens* context.

Because this case presents a new *Bivens* context, the Court must "turn to the second step of *Abbasi* and ask whether any 'special factors counsel[ ] hesitation' in permitting the extension." *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 582 U.S. at 136) (alteration in original). Central to the special factors analysis are "separation-of-powers principles" under which the provision of a new damages remedy should often be committed to Congress. *Abbasi*, 582 U.S. at 134-35; *Hernandez*, 589 U.S. at 102. Among the special factors that courts have relied upon are "the existence of an alternative remedial structure," which "may by itself 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 582 U.S. at 137). Other special factors may include "the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; . . . whether a claim addresses individual conduct or a broader policy question; [and] whether litigation would intrude on the function of other branches of government. . . ." *Bistrian*, 912 F.3d at 90. If there are

special factors counseling hesitation, "a *Bivens* remedy will not be available." *Abbasi*, 582 U.S. at 136. The Supreme Court has made clear that lower courts must exercise caution and restraint before permitting claims that present even a modest extension of *Bivens*.

Gedeon does not present a situation where an extension of *Bivens* is warranted. The special factors present here clearly counsel against extending *Bivens* to cover a Fifth Amendment conditions of confinement claim brought by a pretrial detainee against these type of defendants. "Any special factor – even one – suffices to foreclose a new *Bivens* cause of action. If there is a single reason to pause, then we may not recognize a *Bivens* remedy." *Fisher*, 2024 WL 3820969, at *6 (footnote omitted). Just as in *Fisher*, the "quintessential special factor is also present" here, namely the Bureau of Prison's Administrative Remedy Program applicable to FDC Philadelphia, which is available for Gedeon to use to seek redress of his complaints about wearing a prison jumper while in the facility. *See* 28 C.F.R. § 542.10(a). As noted in *Fisher*,

> That Program "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." Although the [Program] does not include a money damages remedy, inmates may file an administrative grievance with the BOP. . . . An alternative remedy need not be "as effective as an individual damages remedy" to foreclose a *Bivens* extension. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."

*Fisher*, at *6 (footnotes and internal citations omitted); *see also Kalu*, 2024 WL 3884268, at *19 ("The BOP's ARP is an 'administrative review mechanism[ ]' established by the political branches that 'foreclose[s] the need to fashion a new, judicially crafted cause of action.'" (quoting *Malesko*, 534 U.S. at 68); *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (availability of redress through administrative prison remedy "offers a convincing reason . . . to refrain from creating a new damages remedy against federal prison officials"). The risk of judicial interference with the functioning of another branch, *see Abbasi*, 582 U.S. at 140, also presents a

7

special factor why no *Bivens* damages remedy should be recognized, particularly with regard to the United States Marshal Service and hand washing and eating, since Gedeon's claims would impact its operations in securing detainees and transporting them between FDC Philadelphia and secured areas of the United States Courthouse. Gedeon's claim for money damages, based on his having to wear the same clothing as the other inmates and detainees at FDC Philadelphia and being unable to wash his hands as he might like, presents obvious issues of interference with the internal policies, rules, and functioning of the Bureau of Prisons and the Marshal Service, and would likely entail financial and administrative costs to the government. Accordingly, his *Bivens* claims for money damages are not plausible and will be dismissed.[3]

### B. Claims for Injunctive Relief

Gedeon also appears to seek injunctive relief in the form of being permitted to wear clothing that will allow him to stay cool when it is hot. Whatever the source, this claim is also not plausible. As noted, Gedeon has not alleged any personal involvement of the Attorney General, the Unknown Director of the U.S. Marshal Service, or the Warden of FDC Philadelphia. He also does not allege that the Unknown U.S. Marshal Deputy was personally involved in requiring him to wear jumpers. Even if he had named an appropriate Defendant, the

---

[3] The money damages claims suffer from other defects as well. For example, Gedeon's claims against the United States, the United States Marshal Service, and FDC Philadelphia, an agency of the Bureau of Prisons, are barred by sovereign immunity. *See Malesko,* 534 U.S.at 72; *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 n. 11 (1994); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir.1979). Also, where a *Bivens* remedy exists, a plaintiff must allege the personal involvement of each defendant to state a claim. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Gedeon has not explain how the Attorney General, the Unknown Director of the U.S. Marshal Service, or the Warden of FDC Philadelphia were personally involved in a denial of his constitutional rights.

claim cannot proceed. To determine whether prison officials have violated a detainee's rights,[4] "we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (alterations omitted)). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard." *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985); *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 757 (3d Cir. 1979). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Gedeon's allegations about being required to wear a jumper during the heat of summer months does not rise to the level of an objectively serious deprivation, particularly since he concedes that he receives multiple changes of clothing and he has access to deodorant and can shower regularly to maintain his hygiene.

### III. CONCLUSION

For the reasons stated, the Court will grant Gedeon leave to proceed *in forma pauperis* and dismiss his Complaint on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] Cases applying the Eighth Amendment standard to conditions of confinement claims brought by convicted prisoners are also applicable to similar claims brought by detainees under the Fifth Amendment. *Bistrian*, 912 F.3d at 91 ( "[T]he Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts.").

Because it appears that any attempt to amend his claims would prove futile, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints under § 1915(e) with leave to amend "unless amendment would be inequitable or futile").

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**